UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CASEY A. FOSTER,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE. Commissioner of
Social Security,

                              Defendant.

Case No. 3:11-cv-06070-RJB-KLS

REPORT AND RECOMMENDATION

Noted for November 16, 2012

Plaintiff has brought this matter for judicial review of defendant's denial of his

application for disability insurance.  This matter has been referred to the undersigned Magistrate

Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by

Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties'

briefs and the remaining record, the undersigned submits the following Report and

Recommendation for the Court's review, recommending that for the reasons set forth below,

defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On November 10, 2008, plaintiff filed an application for disability insurance benefits,

alleging disability as of December 12, 2007, due to multiple injuries from an automobile

accident, attention deficit disorder ("ADD") and ichthyosis. See Administrative Record ("AR")

13, 113, 143.  That application was denied upon initial administrative review on March 18, 2009,

and on reconsideration on May 27, 2009. See AR 13, 70, 77.  A hearing was held before an

REPORT AND RECOMMENDATION - 1

administrative law judge ("ALJ") on September 22, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a lay witness and a vocational expert. See AR 26-59.

On September 30, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 13-21.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on November 2, 2011, making the ALJ's decision defendant's final decision. See AR 2; see also 20 C.F.R. § 404.981.  On December 29, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1.  The administrative record was filed with the Court on March 26, 2012. See ECF #8.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred: (1) in finding plaintiff's anxiety was not a "severe" impairment; (2) in evaluating the medical evidence in the record; (3) in discounting plaintiff's credibility; and (4) in finding plaintiff to be capable of performing other jobs existing in significant numbers in the national economy.  For the reasons set forth below, however, the undersigned disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

<u>DISCUSSION</u>

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan,

REPORT AND RECOMMENDATION - 2

772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will,

nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence

and making the decision.") (citing <u>Brawner v. Secretary of Health and Human Services</u>, 839 F.2d

432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (citation

omitted); <u>see also Batson</u>, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

supported by inferences reasonably drawn from the record.").  "The substantial evidence test

requires that the reviewing court determine" whether the Commissioner's decision is "supported

by more than a scintilla of evidence, although less than a preponderance of the evidence is

required." <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence

admits of more than one rational interpretation," the Commissioner's decision must be upheld.

<u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

sufficient to support either outcome, we must affirm the decision actually made.") (quoting

<u>Rhinehart v. Finch</u>, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.      <u>The ALJ's Step Two Determination</u>

Defendant employs a five-step "sequential evaluation process" to determine whether a

claimant is disabled. <u>See</u> 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that
> which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
> substantial evidence, the courts are required to accept them.  It is the function of the
> [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
> not try the case de novo, neither may it abdicate its traditional function of review.  It must
> scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
> rational.  If they are . . . they must be upheld.

<u>Sorenson</u>, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 3

at any particular step thereof, the disability determination is made at that step, and the sequential

evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine

if an impairment is "severe." 20 C.F.R. § 404.1520.  An impairment is "not severe" if it does not

"significantly limit" a claimant's mental or physical abilities to do basic work activities. 20

C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL

374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs."

20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has

"no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL

56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841

F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that his "impairments or their

symptoms affect his ability to perform basic work activities." Edlund v. Massanari, 253 F.3d

1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step

two inquiry described above, however, is a *de minimis* screening device used to dispose of

groundless claims. See Smolen, 80 F.3d at 1290.

In this case, the ALJ found plaintiff had severe impairments consisting of a rib fracture, a

lumbosacral sprain, icthyosis of both hands, attention deficit hyperactivity disorder ("ADHD"),

and depression, because they "result in significant work-related functional limitations." AR 15.

The ALJ further found in relevant part that:

> The claimant was diagnosed with a panic disorder with agoraphobia at a
> consultative examination [performed by Sarah Groen-Colyn, Ph.D., in mid-
> February 2009) (Exhibit 9F).  However, this condition has not been diagnosed
> by his treating psych[iatr]ist.  The claimant did not mention problems with
> panic or agoraphobia in his testimony and reported he drives and hangs out
> with friends.  His anxiety is not a severe impairment.

Id.  Plaintiff argues, and the undersigned agrees, that the ALJ erred in finding his anxiety was not

REPORT AND RECOMMENDATION - 4

a severe impairment.

First, while it is true that plaintiff's treating psychiatrist, Jonathan J. Ebbing, M.D., did not diagnosis him with a panic disorder with agoraphobia, his treatment notes, as plaintiff points out, do indicate he believed anxiety may have been a significant component of plaintiff's mental health condition.  For example, in late August 2007, Dr. Ebbing reported a history of depression and anxiety – although plaintiff indicated "that much of that [was secondary to] untreated ADD" – further noting in relevant part that:

> . . . I informed [plaintiff] that I'm a bit concerned about his [blood pressure], although his history of labile blood pressures does suggest that it's reactive due to stress/anxiety. . . . I informed him that I want him to re-check his [blood pressure] in lower-anxiety settings over the next few days to make sure that his baseline is closer to normal. . . .

AR 280.  In mid-October 2008, Dr. Ebbing again noted that plaintiff's elevated blood pressure and heart rate "could be due to anxiety." AR 276.

Although Dr. Ebbing's above comments do not technically amount to an actual diagnosis of anxiety, they certainly provide additional support for Dr. Groen-Colyn's finding that plaintiff had an anxiety-related disorder – i.e., a panic disorder with agoraphobia (see AR 329) – resulting in significant work-related limitations (see AR 330).[2]  Thus, the fact that an anxiety diagnosis was not expressly made by Dr. Ebbing, provided an insufficient basis for rejecting Dr. Groen-Colyn's diagnosis and assessed limitations stemming therefrom, or for finding the record did not establish the existence of a severe anxiety-related disorder.

The ALJ also erred in stating that plaintiff "did not mention problems with panic or

---

[2] Specifically, Dr. Groen-Colyn opined that it seemed "his anxiety and concentration problems would interfere with detailed and complex tasks at this time," that his agoraphobia "could interfere with performing work activities on a consistent basis," that he did "not appear capable of maintaining regular attendance in the workplace or completing a normal workday and workweek due to his agoraphobia and irritability," and that "[t]he usual stress involved in competitive work would likely strain [his] coping resources at this time." Id.

REPORT AND RECOMMENDATION - 5

agoraphobia in his testimony." AR 15.  As plaintiff points out, the ALJ himself inquired at the hearing as to whether his depression and anxiety were situational or in response to his physical injuries, or whether it was "something long term that you've had in the past," to which plaintiff responded that "[i]t's something long term that I've had." AR 36.  Plaintiff also testified that his anxiety – along with his depression and ADD – made it "hard to focus" and "get along with people." AR 35.  Nor does the record show plaintiff drives or hangs out with friends in a manner that is necessarily inconsistent with a diagnosis of panic disorder or agoraphobia. See AR 154, 155 ("spends time . . . with a friend every once in a while," i.e., "once a week"), 163, 164 ("visit[s] with . . . an occasional friend," i.e., "once a week or two"), 181, 182 ("very rarely" spends time with others, "[s]tays to himself mostly"), 189-90, 327.

As plaintiff further points out, the ALJ failed to note that Michael L. Brown, Ph.D., and John F. Robinson, Ph.D., two non-examining consultative psychologists, found he had a number of moderate mental functional limitations due at least in part to panic with agoraphobia. See AR 339, 344, 349, 353-54.  They also opined that plaintiff's anxiety symptoms "would episodically slow work pace," although he could "still be productive." AR 355.  The ALJ, furthermore, gave "significant weight" to the opinion of Drs. Brown and Robinson regarding slow work pace and productivity in assessing plaintiff's residual functional capacity. AR 19.  Accordingly, the ALJ's step two determination lacks validity on this basis as well.

Nevertheless, the ALJ's error in finding plaintiff's anxiety was not a severe impairment was harmless, as it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").  This is because, as defendant notes, the ALJ did not

1  end the sequential disability evaluation process at step two, but as discussed below went on to

2  consider plaintiff's mental health impairments – including his panic disorder and agoraphobia –

3  during the latter steps thereof. See AR 18-19; see also Hubbard v. Astrue, 2010 WL 1041553 *1

4  (9th Cir. 2010) (because claimant prevailed at step two and ALJ considered her impairments

5  later in sequential analysis, any error in omitting them at step two was harmless) (citing Lewis v.

6  Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's error in failing to list bursitis at step two was

7  harmless, where ALJ's decision showed any limitations posed thereby was considered later in

8  sequential disability evaluation process)); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005)

9

10  (any error by ALJ in failing to consider plaintiff's obesity at step two was harmless, because ALJ

11  did not err in evaluating plaintiff's impairments at later steps).

12  II.      The ALJ's Evaluation of the Medical Evidence in the Record

13          The ALJ is responsible for determining credibility and resolving ambiguities and

14  conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

15  Where the medical evidence in the record is not conclusive, "questions of credibility and

16  resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

17  642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v.

18  Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

19  whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

20  all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

21

22  within this responsibility." Id. at 603.

23

24          In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

25  "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this

26  "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

REPORT AND RECOMMENDATION - 7

stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss all evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

REPORT AND RECOMMENDATION - 8

Plaintiff argues the ALJ erred in evaluating the opinion of Dr. Groen-Colyn, with respect

to which the ALJ found in relevant part as follows:

> The claimant underwent a psychological evaluation in February 2009. On
> mental status examination he had recent and immediate memory deficits. He
> had difficulties with concentration on mental status tasks but exhibited
> adequate concentration during the interview. He reported spending his days
> playing video games and watching TV. He was diagnosed with major
> depressive disorder, mild single episode, panic disorder with agoraphobia,
> posttraumatic stress disorder, and attention deficit disorder. Sarah Groen-
> Colyn, Ph.D., opined he may have difficulty performing simple and repetitive
> tasks. He would have difficulty with detailed and complex tasks. He
> appeared capable of interacting with coworkers and the public. He appeared
> capable of accepting instructions from supervisors. Agoraphobia and irritable
> mood could interfere with performing work activities on a consistent basis.
> He did not appear capable of maintaining regular work attendance or
> completing a normal workday due to agoraphobia and irritability. The stress
> involved in competitive work would likely strain his coping resources.
> (Exhibit 9F). The opinion of Dr. Groen-Colyn is given little weight. His
> treating psychiatrist, Jonathan Ebbing, M.D., has not diagnosed a panic
> disorder or posttraumatic stress disorder [("PTSD")] (Exhibit 6F-5). As a
> treating physician, his assessment of the claimant's diagnoses is given greater
> weight. The claimant had been taking cymbalta for only a brief period at the
> time of the [sic] Dr. Groen-Colyn's evaluation. Subsequent treatment records
> reflect improving functioning. April 2009 phone call notes from his
> psychiatrist reflect improved mood. The claimant reported he was good,
> energy was improved, and he was more motivated. He had no medication
> side effects. (Exhibit 14F-6). In July 2010, he was seen for the first time since
> January 2009. He exhibited normal speech and affect. Thought processes
> were linear and goal directed. There were no cognitive deficits. Depression
> was described as in remission (Exhibit 19F-3). In light of the normal mental
> status examination in October 2008 and improved functioning in April 2009, I
> find the February 2009 examination is not reflective of his typical functioning.
> He experienced a brief episode of increased symptoms due to depression but
> this was resolved with medication.

AR 18-19.

The undersigned agrees the ALJ erred in rejecting Dr. Groen-Colyn's opinion based on

the fact that Dr. Ebbing did not specifically diagnose a panic disorder or PTSD for the reasons

discussed above in regard to the ALJ's step two determination. In addition, as plaintiff points

out, in mid-January 2009 – just one month prior to Dr. Groen-Colyn's evaluation – Dr. Ebbing

REPORT AND RECOMMENDATION - 9

gave plaintiff a global assessment of functioning ("GAF") score of "about 45" (see AR 270),

indicating "'[s]erious symptoms . . . [or] serious impairment in social, occupational, or school

functioning,' such as an inability to keep a job." Pisciotta v. Astrue, 500 F.3d 1017, 1076 n.1

(10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision

4th ed. 2000) at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF

score in the forties may be associated with a serious impairment in occupational functioning.").

   A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental

health] clinician's judgment of [an individual's] overall level of functioning.'" Pisciotta, 500 F.3d

at 1076 n.1 (citation omitted).  It is "relevant evidence" of the individual's ability to function

mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007).  Indeed, a GAF score

may be "of considerable help" to the ALJ in assessing a claimant's residual functional capacity.

Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002).   While a GAF

score, furthermore, "is not essential" to the accuracy of that assessment, and thus a "failure to

reference the GAF score" in assessing a claimant's residual functional capacity "standing alone"

does not make it inaccurate (id.), the GAF score Dr. Ebbing gave just one month prior to the date

of Dr. Groen-Conlyn's evaluation report, is consistent with the mental functional limitations Dr.

Groen-Conlyn assessed.  The ALJ's failure to address it was error.

   On the other hand, the undersigned finds no error on the part of the ALJ in not expressly

discussing the fact that Dr. Ebbing continued to prescribe him medications for his mental health

impairments.  Just because a claimant is being prescribed medications, this does not necessarily

mean that claimant suffers from significant, let alone disabling, work-related limitations. See

Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is

insufficient proof of disability).  Indeed, as noted by the ALJ, treatment records subsequent to

REPORT AND RECOMMENDATION - 10

Dr. Groen-Conlyn's evaluation report show significant improvement on medication, even just

two months later.  For example, in late April 2009, Dr. Ebbing wrote in relevant part:

> . . . [Plaintiff] says that he's "good."  I can tell from the tone of his voice that
> he's much more upbeat and positive than at our last encounter.  He feels that
> the Cymbalta and Vitamin D have been helpful.  He is "alot [sic] better" by
> his report.  Energy is improved and he's more motivated to do things. . . . He's
> doing well with his meds for depression and ADHD.  He wishes to continue
> them at this time.  No [side effect]s. . . . He says his wife is "pretty happy"
> with how he's been doing.

AR 368.  Dr. Ebbing found his depression to be in remission.  See id.  Plaintiff's mood again was

noted to be "good" two and a half months later, with Dr. Ebbing once more finding his

depression to be in remission. AR 380-81.

Plaintiff argues such improvement is belied by the following: (1) a late November 2009

law enforcement report indicating he had been brought to the hospital in response to comments

his wife stated he was making about not wanting to live after having found out she had cheated

on him; (2) a visit to the hospital in late February 2010, for detoxification following his having

overtaken his pain medication; and (3) and an arrest on a domestic violence charge in mid-June

2010. AR 37, 41-42, 380, 385-86, 400.  There is no indication, however, that these last two

incidents were at all the result of plaintiff's anxiety, depression or other allegedly disabling

mental health impairments.  Indeed, as discussed above, in the same mid-June 2010 treatment

note, Dr. Ebbing noted that plaintiff's mood was "good". AR 380.  As for the November 2009

report, there is no evidence that this is anything more than a one-time incident, and, indeed, there

are no medical records from that incident indicating the presence of significant on-going mental

health symptoms. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must

show he or she suffers from medically determinable impairment that can be expected to result in

death or that has lasted or can be expected to last for continuous period of not less than twelve

months).  As such, plaintiff's argument here is without merit.

Plaintiff also challenges the ALJ's findings with respect to the medical evidence in the

record concerning his physical impairments:

> Evidence supports a finding that the claimant has some limitations related to
> lumbosacral strain and rib fractures.  However, his allegations of debilitating
> symptoms are not supported by the treatment record.  The claimant was seen
> in the emergency room on December 12, 2007 after a motor vehicle accident.
> He was diagnosed with cervical and lumbar strains and discharged.  Old rib
> fractures with possible nonunion or repeat fracture were also noted. (Exhibit
> 1F-1-5).  January 2008 CT scan of the lumbar spine was normal (Exhibit 1F-
> 7).  June 2008 MRI of the lumbar spine was also normal (Exhibit 1F-6).  Due
> to ongoing pain symptoms he began physical therapy in June 2008 but he was
> discharged in August 2008 due to noncompliance with attendance. (Exhibit
> 2F).  At a July 2008 examination there was tenderness at the right lower back,
> upper middle trapezius muscles, and right lower rib cage.  There were no
> neurological findings and he exhibited full strength.  He was treated with
> trigger point injections (Exhibit 5F-15).  Joseph Davis, M.D., a treating
> physician, authorized time loss from September 1, 2008 through October 1,
> 2008 and again from October 1, 2008 through November 1, 2008 (Exhibit
> 3F).  On October 21, 2008 he stated the claimant had been totally disabled as
> of December 17, 2007 and could not return to his previous employment or any
> other form of employment (Exhibit 4F).  The opinion of Dr. Joseph is given
> little weight.  It is not consistent with the minimal examination findings and
> the claimant's lack of interest in pursuing physical therapy.  Dr. Joseph
> provides no specific functional limitations.  His opinion involves vocational
> issues of which he has no expertise.

AR 17-18.  Although plaintiff complains that the ALJ did not state which examination findings

he found to be minimal, there is no error here given that the clinical findings Dr. Davis provided

overall fail to give any indication as to why he felt plaintiff was disabled. See AR 249, 252-53,

255; see also Batson, 359 F.3d at 1195 (ALJ need not accept treating physician opinion if it is

inadequately supported by clinical findings).  For the same reason, the ALJ did not err in giving

little weight to Dr. Davis's disability opinion on the basis that he provided no specific functional

limitations that would indicate a disabling condition. See AR 234-35, 242.  Plaintiff concedes as

well that the ALJ also properly discounted the opinion of Dr. Davis on the basis that it "involves

REPORT AND RECOMMENDATION - 12

vocational issues of which he has no expertise" (AR 18), as "the ultimate determination" as to whether a claimant is disabled is reserved to defendant, and therefore "[a] statement by a medical source that [the claimant is] 'disabled' or 'unable to work' does not mean" that he or she will be determined to be disabled. 20 C.F.R. § 404.1512(b)(7), § 404.1527(e)(1).

The undersigned does agree that the ALJ erred in rejecting Dr. Davis's opinion due to plaintiff's "lack of interest in pursuing physical therapy" (AR 18), given that the only evidence of such lack of interest appears to be three missed appointments, and that it also appears plaintiff had valid reasons for missing them. See AR 228 ("The patient reports sick."); 230 ("Patient cancelled due to having to [sic] much pain this morning to ride his bike in."); 231 ("The patient reports no transportation"); see also Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (improper to discount credibility based on failure to pursue treatment when claimant "has a good reason for not" doing so); SSR 96-7p, 1996 WL 374186 *7 (ALJ must not draw any inferences about claimant's symptoms and their functional effects from his or her failure to follow prescribed treatment, without first considering any explanations claimant may provide or other information in record which may explain that failure).  As discussed above, however, the ALJ provided other valid reasons for rejecting Dr. Davis's opinion.

III.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.

REPORT AND RECOMMENDATION - 13

1    Tonapetyan , 242 F.3d at 1148.

2    　　　　To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

3    reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

4    testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also

5    Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

6    claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

7    and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of

8
9    malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

10    　　　　In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

11    credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

12    symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  The

13    ALJ also may consider a claimant's work record and observations of physicians and other third

14
15    parties regarding the nature, onset, duration, and frequency of symptoms. See id.

16    　　　　The ALJ in this case found plaintiff to be not fully credible concerning his subjective

17    complaints. See AR 17-19.  Plaintiff challenges the ALJ's adverse credibility determination at

18    the outset on the basis that "no medical examiner has questioned" his credibility "with regard to

19    his symptoms." ECF #16, p. 22.  There is no requirement, however, that this must occur in order

20    for the ALJ to question a claimant's credibility.  Indeed, as noted above, questions of credibility

21    are solely within the control of the ALJ, not those who have treated or examined the claimant.

22
23    See Sample, 694 F.2d at 642.

24    　　　　Plaintiff also takes issue with the ALJ's statement that "the intensity, persistence and

25    limiting effects of [his alleged] symptoms are not credible to the extent they are inconsistent with

26    the" residual functional capacity assessment made by the ALJ (see AR 17), arguing "[t]his is a

REPORT AND RECOMMENDATION - 14

1   linguistic formula that says nothing meaningful," and gives "no guidance as to what" specifically

2   the ALJ found lacked credibility (ECF #16, p. 22).  But this is just an introductory statement the

3   ALJ used to signal the beginning of his credibility determination.  See AR 17-19.  Nor does the

4   undersigned find any merit in plaintiff's assertion that in making the above statement, the ALJ in

5   effect was assessing his residual functional capacity prior to determining his credibility.  Again,

6   this is merely an introductory statement.  It in no way signals the ALJ has "put the cart before the

7   horse." ECF #16, p. 22.

8

9       In terms of actual reasons for discounting plaintiff's credibility, the ALJ found plaintiff's

10  "allegations of debilitating symptoms are not supported by the treatment record" (AR 17), setting

11  forth a detailed summary of the medical evidence regarding his mental and physical impairments

12  and limitations, and explaining how that evidence did not support those allegations. AR 17-19.

13  A determination that a claimant's subjective complaints are "inconsistent with clinical

14  observations" can satisfy the clear and convincing requirement, as it does here, particularly in

15  light of the fact that, as discussed above, the ALJ did not err in rejecting the medical evidence in

16  the record. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  Nor does

17  plaintiff specifically challenge this aspect of the ALJ's credibility determination. See Carmickle

18  v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not

19  argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana

20  Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief,

21  objection to district court's order was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998)

22

23  (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

24

25      The ALJ also discounted plaintiff's credibility because:

26      The claimant has a long history of ichthyosis.  On examination in November
        2008 there was hyperkeratosis of both hands (Exhibit 5F-6).  The claimant has

REPORT AND RECOMMENDATION - 15

1
2

> worked in the past despite this condition.  There is no evidence it has
> worsened. . . .

AR 18.  Given that plaintiff has alleged disability based at least in part on his ichthyosis, the ALJ

was not remiss in discounting his credibility on this basis.  Nor did the ALJ err in finding him to

be less than entirely credible for the following reason:

> In terms of the claimant's alleged mental symptoms, he has reported Adderall
> works well for his ADHD symptoms with no side effects.  On mental status
> examination in October 2008 he exhibited stable mood, full affect, and intact
> cognition. (Exhibit 6F-11-12).  The claimant was diagnosed with depression
> in January 2009 and was prescribed Cymbalta (Exhibit 6F-6).
>
> . . . Subsequent treatment records reflect improved functioning.  In April 2009
> phone call notes from his psychiatrist reflect improved mood.  The claimant
> reported he was good, energy was improved, and he was more motivated.  He
> had no medication side effects. (Exhibit 14F-6).  In July 2010, he was seen for
> the first time since January 2009.  He exhibited normal speech and affect.
> Thought processes were linear and goal directed.  There were no cognitive
> side deficits.  Depression was described as in remission (Exhibit 19F-3). . . .

AR 18-19; see also Morgan, 169 F.3d at 599 (ALJ may discount claimant's credibility on basis

of medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  Again, plaintiff

presents no specific argument challenging this basis for discounting his credibility.

The undersigned does agree the ALJ erred in discounting plaintiff's credibility based on

his activities of daily living (see AR 18), as the evidence in the record fails to show that he spent

a substantial part of his day performing them or that they necessarily are transferrable to a work

setting.  Nor are those activities necessarily inconsistent with plaintiff's testimony regarding his

alleged symptoms and limitations.  See AR 151-55, 160-64, 178-82, 186-90, 200, 327.[3]  But the

---

[3] The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination."  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).  First, such activities can "meet the threshold for transferable work skills."  Id.  Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting."  Smolen, 80 F.3d at 1284 n.7.  The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment."  Id.  In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead

REPORT AND RECOMMENDATION - 16

fact that one of the reasons an ALJ gives for discounting a claimant's credibility is improper, does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case for the other reasons discussed above. See Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

IV.   The ALJ's Findings at Step Five

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

---

normal lives in the face of their limitations." Reddick, 157 F.3d at 722.  Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or her] other testimony." 495 F.3d at 639.

The ALJ in this case found plaintiff had the residual functional capacity:

**. . . to perform light work . . . except he can stand and walk 4 hours out of an 8-hour day and can do no more than frequent handling and occasional climbing.  He is limited to simple instructions and simple, repetitive tasks. He would have an episodically slow work pace but would be able to complete a normal amount of work in a workday.  He should not have more than occasional interaction with the public.  He is able to carry out routine social interactions within the workplace.**

AR 16 (emphasis in original).  Plaintiff does not specifically challenge this RFC assessment, and because, as discussed above, the ALJ did not err in evaluating the medical evidence in the record or in discounting plaintiff's credibility, the undersigned finds no error here as well.

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed the following hypothetical question to the vocational

REPORT AND RECOMMENDATION - 18

expert:

> . . . If we had an individual with age, education, and work experience similar
> to that of the claimant who was limited to modified light duty in that he could
> lift 20 pounds occasionally and 10 pounds frequently.  He could stand and
> walk for up to six hours a day.  He could sit for up to six hours a day.  He was
> limited to not more than occasional climbing, not more than frequent
> handling.  And then he has these following additional restrictions.  He is able
> to remember and execute simple instructions and maintain concentration on
> simple repetitive tasks.  He could have a [sic] episodically slow work pace but
> would be able to complete a normal amount of work within the workday.  He
> should not have more than occasional interaction with the public, but he is
> able to carry out routine social interaction within the workplace. . . .

See AR 56-57.  In response to that question, the vocational expert testified that such an

individual would be able to perform other jobs.  See AR 57.  The vocational expert also testified

that plaintiff would be able to perform those other jobs, even when standing and walking is

limited to four hours a day.  See id.  Based on the vocational expert's testimony, the ALJ found

plaintiff was capable of performing other jobs existing in significant numbers in the national

economy.  See AR 20-21.

   Plaintiff argues the ALJ erred because the hypothetical question he posed was different

from the residual functional capacity he assessed.  Specifically, plaintiff notes that while in his

decision the ALJ stated he "***would* have an episodically slow work pace but would be able to

complete a normal amount of work in a workday**" (AR 16 (italics added)), in posing the

hypothetical question, the ALJ stated plaintiff "*could* have a [sic] episodically slow work pace

but would be able to complete a normal amount of work within the workday" (AR 57 (italics

added)).  Although plaintiff is correct that the meaning of "would" is substantially different from

that of "could", in both cases the ALJ concluded he "would be able to complete a normal amount

of work within the workday." AR 57; see also AR 16.  In other words, replacing the former word

with the latter had no effect on the ultimate conclusion as to plaintiff's ability in this area, i.e.,

REPORT AND RECOMMENDATION - 19

1   that he can complete a normal amount of work.  Thus, to the extent the ALJ did err in posting the

2   hypothetical that he did, that error was harmless.[4]

3       Plaintiff goes on to argue that Dr. Brown and Dr. Robinson, whose opinion concerning

4   mental functional capabilities the ALJ relied on to assess the above limitation, stated instead that

5   plaintiff "can still be productive" (AR 335), rather than that he "could complete a normal amount

6   of work within the workday" (AR 57).  Plaintiff then states:

7

8           . . . From the questioning of the ALJ at the hearing it is clear th[at] he,
        the ALJ, thought that "productive" meant performance at something more
9       than less than 80% of normal.
            In light of the vocational expert's opinion that performance at 90% of
10      normal would make [plaintiff] incapable of competitive employment, i.e. not
        productive enough to maintain employment, there should be some explanation
11      in the [ALJ's] decision as to what a normal amount of work in a workday
        means.  None appears. . . .
12

13  ECF #16, p. 20.  But the hearing transcript does not at all support plaintiff's argument here.  The

14  80% figure comes from an *additional* hypothetical question the ALJ subsequently posed, which

15  reads in relevant part as follows:

16
            . . . [L]et's . . . go back to the hypothetical number two where we're doing all
17      those things and we have the four hours standing.  But let's say that this
        individual because of his mental impairments that it would, or his pain, that
18      one of those things would interfere with his performance and productivity
        such that he was producing, say, 80 percent of what you would call a normal
19      worker.  Would that interfere with the ability to maintain competitive
        employment?
20

21  AR 58.  Nothing in the hearing transcript or the ALJ's decision, however, indicates that the ALJ

22  actually adopted this limitation or equated it with being productive.  As such, no explanation of

23  the difference between the 80% and 90% was needed.  The undersigned, furthermore, finds it to

24  be entirely reasonable for the ALJ to equate the term "productive" with being able to complete a

25

26  ─────────────────────────
    [4] An error is harmless if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v.
    Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Parra v. Astrue, 481 F.3d 742,
    747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

normal amount of work in a workday, particularly since the medical sources upon whose opinion the ALJ relied did not indicate a contrary meaning for that term. See AR 355; see also Allen, 749 F.2d at 579 ("[i]if the evidence admits of more than one rational interpretation," Commissioner's decision must be upheld).

CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as well that the Court affirm defendant's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 16, 2012**, as noted in the caption.

DATED this 30th day of October, 2012.


_Karen L. Strombom_
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21